UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:13-cv-509-FDW

| COLELL B. STEELE, | ) |  |
|---|---|---|
|  | ) |  |
| Petitioner, | ) |  |
|  | ) |  |
| v. | ) | ORDER |
|  | ) |  |
| MIKE BALL, | ) |  |
|  | ) |  |
| Respondent. | ) |  |
|  | ) |  |

**THIS MATTER** is before the Court on consideration of Respondent's motion for summary judgment on the claims presented by Petitioner in his petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. For the reasons that follow, Respondent's motion will be granted and Petitioner's Section 2254 petition will be denied and dismissed.[1]

## I.  BACKGROUND

Petitioner became a prisoner of the State of North Carolina after he was convicted in Mecklenburg County Superior Court on April 20, 2011, following a jury trial on charges of larceny after breaking or entering and felonious possession of stolen goods. Petitioner admitted his status as a habitual felon and the trial court arrested judgment on the larceny after breaking or entering conviction and he was sentenced to a term of 146 to 185 months' imprisonment. Petitioner appealed to the North Carolina Court of Appeals and the court summarized the evidence presented as follows:

> The State's evidence tended to show that on 20 May 2010

---

[1] Petitioner filed a motion to substitute respondent based on his transfer to Columbus Correctional Institution where he asserts Nora Hunt is the present administrator. Petitioner's motion will be allowed and Nora Hunt will be substituted as respondent. See Rule 2(a) of the Rules Governing Section 2254 Cases.

defendant went into Cash America Pawn with his friend Tiffany Northern (Northern). The two approached the customer service representative (the representative) with a Dell computer to pawn. The representative asked for an ID to match the computer. Northern provided hers, which was not a match. The manager of Cash America Pawn recognized defendant and/or Northern and quietly instructed the representative to stall the two from leaving the premises. The representative offered defendant $25.00 for the Dell computer. Defendant instructed Northern to retrieve a camera from his vehicle, which she did. He then asked Northern to return to his vehicle once more to retrieve a DVD player.

Around 9:30 am on 20 May 2010, Detective Yvonne Galloway (Detective Galloway) went to Cash America Pawn to view a surveillance video which was thought to contain footage of a breaking and entering suspect. Later that afternoon, the manager at Cash America Pawn called Detective Galloway to inform her that a subject of interest in the surveillance video was presently in the pawn shop. Detective Galloway called for backup at Cash America Pawn in order to assist her in detaining and arresting defendant and Northern as breaking and entering suspects.

By the time Detective Galloway arrived, defendant and Northern had been secured in separate police cars. Detective Galloway approached defendant, informed him that he was under arrest, and asked if he wanted to speak with her. She did the same with Northern.

Detective Galloway then noticed several officers searching a vehicle in the parking lot. The officers told Detective Galloway that Northern consented to a search of the vehicle. Officer Galloway ran the tags to the vehicle and learned that defendant owned the vehicle. As defendant had not consented to a search of his vehicle, Officer Galloway instructed the officers to cease the search. Shortly thereafter, the manager of Cash America Pawn told Officer Patricia Edwards (Officer Edwards) that he intended to tow defendant's vehicle. Detective Galloway resumed the search of defendant's vehicle and recovered a basket filled with various CDs. The Dell computer, the camera, and the DVD player that defendant attempted to sell were also confiscated. The items were identified on 20 April 2010 as belonging to breaking and entering victim Audrey Hughes.

State v. Steele, No. COA12-162, 2012 N.C. App. LEXIS 1114 (N.C. Ct. App. Oct. 2, 2012) (unpublished).

In his first argument on appeal, Petitioner contended that the trial court erred in denying his motion to suppress evidence which he argued was obtained following an unconstitutional search of his vehicle. The court rejected Petitioner's challenge to the trial court's ruling and reasoned as follows:

> This Court's review of a trial court's denial of a motion to suppress evidence is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982) (citations omitted).
>
> In considering whether the search of defendant's vehicle violated his Fourth Amendment rights, we must first begin with a discussion of *Arizona v. Gant*, 556 U.S. 332, 173 L. Ed. 2d 485 (2009). In *Gant*, the defendant was arrested for a traffic offense. He was then handcuffed and locked in the back of a patrol car, thus having no access to his vehicle. The arresting officers had no apparent reason to believe that the defendant's vehicle contained contraband; however, they searched it anyway and found cocaine and a weapon in the car. *Id.* at 332, 173 L. Ed. 2d at 489. The defendant moved to suppress the evidence seized from his car on the grounds that the warrantless search violated his Fourth Amendment rights. The Supreme Court set out a two prong test whereby police may search a vehicle incident to a recent occupant's arrest only if "[1] [the] arrestee is within reaching distance of the passenger compartment at the time of the search or [2] it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* at 351, 173 L. Ed. 2d at 485. Given the particular circumstances in *Gant*, the Supreme Court held that prong 2 was applicable and that it was reasonable to search the passenger compartment of the defendant's vehicle.
>
> In *State v. Mbacke*, the North Carolina Supreme Court

3

further interpreted *Gant* with the specific aim of clarifying the term "reasonable to believe" as applied to the second prong of the *Gant* test. See ___ N.C. ___, 721 S.E.2d 218, 222 (2012). In *Mbacke*, the defendant's vehicle was searched following his arrest for carrying a concealed weapon. Our Supreme Court held that the search was reasonable under the second prong of *Gant,* concluding that when investigators have a "reasonable and articulable basis to believe that evidence of the offense of arrest might be found in a suspect's vehicle after the occupants have been removed and secured, the investigators are permitted to conduct a search of that vehicle." *Id*. Our Supreme Court also noted that the "reasonable to believe" standard in *Gant* established a threshold less than probable cause, concluding that it was on par with the objective "reasonable suspicion" standard used to justify a Terry stop. *Id*.; *See also Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889, 906 (1968). Additionally, our Supreme Court held that the "reasonable to believe" standard as set out in *Gant* is not dependent on the nature or type of the offense of arrest; instead, the circumstances of each case must determine the propriety of any vehicular searches conducted incident to an arrest. *See Id*. at ___, 721 S.E.2d at 223.

       In the current case, defendant was arrested, restrained in handcuffs, and secured in the back of a police car before the police searched his vehicle. Therefore, he did not have access to the passenger compartment of his vehicle and the first prong of the *Gant* test is inapplicable. However, the second prong of *Gant* applies here. Defendant was arrested at a pawn shop on charges of breaking and entering and felonious possession of stolen goods. The evidence shows that defendant attempted to sell a Dell computer for which he had no identification match. Furthermore, while overseeing negotiations with the representative, he instructed Northern to retrieve a camera and DVD player from his vehicle. Additionally, a basket of CDs covered by a sheet was found in defendant's vehicle. Given the particular circumstances, we believe that the search of defendant's vehicle was in keeping with *Gant* and *Mbacke*. Accordingly, we conclude that the trial court did not err in denying defendant's motion to suppress.

Steele, 2012 N.C. App. LEXIS 1114, at *3-7.

    Petitioner next argued that his constitutional rights were violated by the trial court's

admission of the testimony regarding his assertion of the right to remain silent after he was

arrested. The court found this argument to be without merit and offered the following analysis:

> Defendant next argues that his constitutional rights were violated by the admission of testimony that he invoked his right to remain silent after his arrest. Specifically, he asserts that (1) Detective Galloway's statement that defendant declined to speak with her after his arrest was prejudicial and improperly admitted by the court and (2) that Officer Edwards' statement that defendant "pled the fifth" when asked if he was a Wynonna Judd fan was so highly prejudicial that its effect could not be erased from the mind of the jurors even after the trial court instructed the jury to disregard the statement. We disagree.
>
> A defendant's exercise of his constitutionally protected right to remain silent "may not be used against him at trial. However, such a constitutional error will not warrant a new trial where it was harmless beyond a reasonable doubt." *State v. Elmore*, 337 N.C. 789, 792, 448 S.E.2d 501, 502 (1994). (citations omitted). "Evidentiary errors are harmless unless a defendant proves that absent the error a different result would have been reached at trial." *State v. Ferguson*, 145 N.C. App. 302, 307, 549 S.E.2d 889, 893 (2001).
>
> At trial, Detective Galloway testified that she "walked up to the police car [defendant] was located in and informed him he was under arrest and asked him if he wanted to speak with [her]." The trial court overruled defendant's objection to the statement. The State next asked whether Detective Galloway could identify defendant in the courtroom. The record reflects that at no time did Detective Galloway actually state that defendant declined to speak with her. Therefore, as no improper comment was ever specifically made regarding defendant's decision to remain silent, defendant's argument in this instance is without merit.
>
> Defendant next directs our attention to a statement made by Officer Edwards during her testimony regarding the CDs that were recovered from defendant's vehicle. On direct examination Officer Edwards stated, "I remember asking, are you [defendant] a Wynonna Judd fan?" Defendant's counsel objected and the court overruled the objection. Officer Edwards then stated that

defendant responded by saying "I plead the fifth." The trial
court sustained defendant's objection to Officer Edwards'
testimony and instructed the jury to disregard it in their
deliberations.

Here, any prejudice defendant may have suffered from
Officer Edwards' statement was removed when the trial court
struck the unsolicited statement and issued limiting
instructions to the jury to disregard the statement in their
deliberations. Moreover, there is no evidence of further
testimony by any witness regarding whether defendant agreed to
speak and the State never emphasized the fact that defendant
invoked his right to remain silent. For the foregoing reasons,
we conclude that the trial court neither erred in its treatment
of Officer Edwards' statement nor was defendant in any way
harmed by it.

Steele, 2012 N.C. App. LEXIS 1114, at *7-9.

In his final argument, Petitioner contended that the trial court erred in its instructions to the jury regarding the theory of acting in concert as it related to the felonious larceny charge. The court disposed of this argument reasoning as follows:

First we note that defendant's argument is moot given that
the trial court arrested judgment on the conviction of larceny
after breaking and entering. Additionally, because defendant
has failed to persuade us on the two above-mentioned issues, we
deem it unnecessary to address defendant's remaining argument as
the issue will not arise again at retrial.

However, assuming *arguendo* that defendant's argument is not
moot, we disagree with defendant's final argument.

"The purposes of the trial judge's charge to the jury are
to clarify the issues, eliminate extraneous matters and declare
and explain the law arising on the evidence." *State v. Barnes*,
297 N.C. 442, 445, 255 S.E.2d 386, 389 (1979). Our Supreme
Court has held that a conviction under an acting in concert
theory requires a defendant to "have been at the scene of the
crime and the evidence must be sufficient to show he [was]
acting together with another who [did] the acts necessary to
constitute the crime pursuant to a common plan[.]" *State v.*

> *Bray*, 321 N.C. 663, 671-72, 365 S.E.2d 571, 576 (1988)
> (citations and quotations omitted). Moreover, neither
> simultaneous action nor equal participation in the commission of
> a crime by two persons is a prerequisite for the application of
> the theory of acting in concert. *State v. Whiteside*, 325 N.C.
> 389, 405, 383 S.E.2d 911, 920 (1989).
>
>     Defendant argues that because the State failed to present
> any evidence that defendant was assisted by another person in
> the commission of the felonious breaking and entering coupled
> with the fact that he maintained control of all negotiations at
> Cash America Pawn, the trial court had no grounds on which to
> instruct the jury on the theory of acting in concert.
>
>     We reject defendant's argument. Here, the State presented
> evidence that Northern and defendant arrived together at Cash
> America Pawn. While in the store, Northern retrieved a camera
> and DVD player from defendant's vehicle as per defendant's
> request. Additionally, Northern provided her license when the
> representative asked for identification to match the Dell
> computer. Taken as a whole, the evidence presented at trial is
> sufficient to warrant the instruction of acting in concert.
> Accordingly, we conclude that the trial court did not err.

Steele, 2012 N.C. App. LEXIS 1114, at 9-11.

After rejecting each of Petitioner's challenges on appeal, the court affirmed his judgment in all respects and he did not seek discretionary review from the Supreme Court of North Carolina. Instead, Petitioner filed a motion for appropriate relief (MAR) in Mecklenburg County Superior Court. Petitioner renewed his challenges to the trial court's denial of his motion to suppress; the trial court's admission of statements made by witnesses regarding his invocation of his right to remain silent; and the trial court's alleged error in the jury instructions on acting in concert. Petitioner also raised a claim that he should receive the retroactive benefit of a sentencing reduction based on a change in North Carolina law that became effective after his offenses were committed. (Civil Case No. 3:13-cv-509, Doc. 9-6: MAR). The superior court

7

denied each of Petitioner's claims as being without merit, (Id., Doc. No. 9-7), and Petitioner filed a petition for a writ of certiorari with the North Carolina Court of Appeals. The State filed a response and noted that Petitioner should be procedurally barred under North Carolina law from presenting the first three issues in his petition because each of these issues had been decided adversely to him by the court of appeals on direct appeal. See (Doc. No. 9-9: State's Response) (citing N.C. Gen. Stat. § 15A-1419(a)(2)). The State further noted that Petitioner's additional argument for the retroactive application of changes to North Carolina's Structured Sentencing Act should likewise be procedurally barred because Petitioner was in a position to raise this issue on direct appeal but he failed to do so and he could not demonstrate that a failure to consider the argument before the court of appeals would "result in a fundamental miscarriage of justice." (Id. at 4). The court of appeals denied the petition for a writ of certiorari. Steele v. State, No. P13-150 (N.C. Ct. App. Mar. 14, 2013). (Id., Doc. No. 9-10).

Next, Petitioner filed a petition for a writ of habeas corpus in the North Carolina Court of Appeals and raised several claims for relief. First, Petitioner argued that the trial court lacked jurisdiction to impose "an enhanced or aggravated sentence." (Id., Doc. No. 9-11 at 3-4). Petitioner also argued that his sentence was illegal because his indictment failed to charge facts that could support his increased penalty. (Id. at 9). In his third claim, Petitioner contended that his conviction and sentence for having attained the status of habitual felon has violated his constitutional rights through illegal seizure, violation of due process and his right to be free from cruel and unusual punishment. (Id. at 13). In his fourth claim, Petitioner argues that he received ineffective assistance of trial and appellate counsel because they failed to challenge his "deficient indictments." (Id. at 17). On August 21, 2013, the court of appeals denied the habeas petition.

8

Steele v. State, No. P13-150 (N.C. Ct. 2013). (Id., Doc. No. 9-12).

This federal habeas petition follows. The Respondent filed a motion for summary judgment and Petitioner was notified of his right to file a response, (Doc. No. 10: Roseboro Order), and he has done so. This matter is now ready for disposition.

## II. STANDARD OF REVIEW

### A. Summary Judgment Standard

Summary judgment is appropriate where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

### B. Section 2254 Standard

In addition to the summary judgment standard set forth above, this Court must also consider the requirements set forth in 28 U.S.C. § 2254, which provides in relevant part, that an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Tice v. Johnson, 647 F.3d 87, 103 (4th Cir. 2011).

A claim is considered "adjudicated on the merits" when it is "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree. . ." Young v. Catoe, 205 F.3d 750, 755 n.2 (4th Cir. 2000) (quoting Thomas v. Davis, 192 F.3d 445, 455 (4th Cir. 1999)). A state court's adjudication is "contrary to" clearly established federal law only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "It is not enough for us to say that, confronted with the same facts, we would have applied the law differently; we can accord [the petitioner] a remedy only by concluding that the state court's application of the law in his case was objectively unreasonable." See Tice, 647 F.3d at 103 (citing Williams v. Ozmint, 494 F.3d 478, 483-84 (4th Cir. 2007)). "[W]e will not discern an unreasonable application of federal law unless 'the state court's decision lies well outside the boundaries of permissible differences of opinion.'" Id. at 108 (quoting Goodman v. Bertrand, 467 F.3d 1022, 1028 (7th Cir. 2006)).

### III. DISCUSSION

A. <u>Trial Court's Denial of Motion to Suppress</u> (Ground One)

Petitioner moved to suppress evidence before the trial court contending that the evidence was obtained following an unconstitutional search of his vehicle. The Court finds that the thorough reasoning of the court of appeals, which clearly adjudicated this claim on the merits and affirmed the trial court's order, does not entitle him to relief in a federal habeas proceeding

10

because the decision to uphold the trial court's order on the motion to suppress did not result in an unreasonable application of Supreme Court precedent, namely the holdings announced in Supreme Court's opinion in <u>Arizona v. Gant</u>, 556 U.S. 332 (2009) and <u>Terry v. Ohio</u>, 392 U.S. 1 (1968). 28 U.S.C. § 2254(d)(1). The Court further finds that the State court's decision was not based on an unreasonable application of the facts of Petitioner's case. <u>Id.</u> § 2254(d)(2). For the foregoing reasons, this claim will be denied.

      B.     <u>Fifth Amendment Right to Remain Silent</u> (Ground Two)

Petitioner contends that he is entitled to federal habeas relief because the trial court erred in admitting certain testimony during his trial which tended to show that he had invoked his right to remain silent following his arrest. The court of appeals found that he was not entitled to relief based on the admission of the officers' testimony, which is expansively summarized above, and this represents a decision on the merits of this claim. The Court finds after examination of the court of appeals decision and the relevant Supreme Court precedent, that Petitioner has failed to demonstrate that any alleged error in the admission of the officers' testimony entitles him to any relief under the deferential standard as set forth in § 2254(d). And even assuming error in the admission of such testimony, Plaintiff cannot demonstrate that such admission violated his right to a fair a trial because the admission was harmless in light of the substantial evidence of Petitioner's guilt and because of the trial judge's curative instructions to the jury. <u>See, e.g.</u>, <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993) (adopting harmless-error standard on federal habeas review as set out in <u>Kotteakos v. United States</u>, 328 U.S. 750, 776 (1946)). "The <u>Kotteakos</u> standard, we believe, fills the bill. The test under <u>Kotteakas</u> is whether the error "had substantial and injurious effect or influence on the jury's verdict." <u>Id.</u> The historical "meaning of

11

habeas corpus [is] to afford relief to those whom society has grievously wronged." Id. (internal quotations omitted). See also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) (finding that absent a specific constitutional violation, federal habeas review of trial error is limited to whether the error "so infected the trial with unfairness as to make the resulting conviction a denial of due process.") (internal quotation marks omitted).

Based on the record before the State court, and the State court's determination of this issue, the Court finds that Petitioner has failed to demonstrate that he is entitled to habeas relief.

      C.      <u>Trial court erred in acting in concert instruction</u> (Ground Three)

Petitioner argues that the trial court committed reversible error, or plain error in the alternative, in charging the jury on the crime of acting in concert because the State failed to produce sufficient evidence to support an instruction on the crime. (Doc. No. 1 at 9). On direct appeal, the court of appeals examined the following argument: "defendant argues that the trial court erred by improperly instructing the jury on the theory of acting in concert as it applied to his felonious larceny charge." Steele, 2012 N.C. App. LEXIS 1114, at *9-10. The Respondent argues that this instant claim is procedurally barred because he did not raise the precise substance of the claim in federal constitutional terms in his direct appeal or in his MAR. (Id., Doc. No. 9 at 9) (citing Duncan v. Henry, 513 U.S. 364 (1995) and Mallory v. Smith, 27 F.3d 991, 994-95 (4th Cir.), cert. denied, 513 U.S. 1047 (1994)).

Even assuming *arguendo* that Petitioner's claim is not procedurally defaulted, he is not entitled to habeas relief because what Petitioner has presented is simply an argument based squarely on state law and "federal habeas corpus does not lie for errors of state law . . .". Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (internal citations omitted). The question to be resolved on

12

federal habeas review in a challenge to a jury instruction is whether the petitioner has "established not merely that the instruction is undesirable, erroneous, or even universally condemned, but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Cupp v. Naughten, 414 U.S. 141, 146 (1973) (internal quotation marks omitted). The Court finds that Petitioner has failed to meet this burden and this claim will be denied.

D. Equal Protection Violation (Ground 4)

Here, Petitioner contends that his sentence violates his right to equal protection because he did not receive the retroactive application of the Justice Reinvestment Act (JRA). (Doc. No. 1 at 10). The State MAR court denied this claim on the merits and the court of appeals denied his petition for discretionary review.

The JRA was made effective by the North Carolina General Assembly on December 1, 2011, see N.C. Gen. Stat. § 14-7.6, and the law specifically provided that the JRA would only apply to an offender who committed an offense that occurred on or after its effective date. See N.C. Sess. Laws. 2011-192, § 3(e). Petitioner was sentenced on April 20, 2011, in Mecklenburg County Superior Court to a term of 145 to 185 months which was a sentence enhanced by his status as a habitual felon thus his offenses were certainly committed before the JRA's effective date. See Steele, 2012 N.C. App. LEXIS 1114, at *1. Petitioner's judgment was affirmed in all respects by the North Carolina Court of Appeals on October 2, 2012, and he did not seek further direct review from the Supreme Court of North Carolina.

North Carolina federal districts have expressly refused to find a right to habeas relief – based on a finding that the JRA should apply retroactively under the provisions of § 2254(d) –

because the JRA is purely a question of State statutory law. See Stoneman v. Solomon, No. 1:13cv836-TDS, 2014 WL 1270060, at *4-5 (M.D.N.C. Mar. 26, 2014) (collecting cases).

Petitioner's claim is that there was an error of state law, which he contends was committed when the State court denied this claim on the merits after reviewing his MAR, but again "federal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991) (citing Jeffers, supra at 780). This claim will be denied.

    E.    Habitual Felon Challenge (Grounds Five, Six and Seven)

Petitioner argues here that the trial court lacked jurisdiction to sentence him "to an enhanced or aggravated sentence." (Doc. No. 1 at 39) (Ground Five). In Ground Six, he presents what can only be described as the same argument as in Ground Five. (Id. at 6). And in Ground Seven, Petitioner lodges yet another challenge to his sentence which was imposed after he admitted his status as a habitual felon. (Id. at 48). Accordingly, these claims will be addressed together.

Petitioner was indicted as a habitual felon by the Mecklenburg County Grand Jury after they found probable cause to believe that he had been convicted of six felony offenses, with each offense having occurred on a different date spanning from 1989 to 1998. (Doc. No. 9-3: Indictment at 9-10). Each felony offense was detailed in the indictment and Petitioner entered a guilty plea following his 2011 convictions and averred that he was in fact guilty of having attained the status of habitual felon and acknowledged that he faced a maximum punishment of 261-months upon conviction. (Id. at 14-15: Transcript of Plea). Petitioner argues that his indictment was defective because it did not provide him with sufficient notice of the prior felonies. Or as Petitioner states: "It is equally certain and well-settled precedent that the

14

indictment must contain an allegation of every fact which is legally essential to the punishment inflicted." (Doc. No. 1 at 40). As just noted, Petitioner's habitual felon indictment expressly sets forth the alleged prior felonies and Petitioner was clearly informed that he could face a maximum punishment of 261-months' imprisonment upon conviction at his sentencing hearing on the habitual felon charge. The Court finds that Petitioner's arguments here are simply without merit as there was no constitutional violation to be found in this record as he was provided notice of the charge; the basis for the charge; and the potential penalties that could follow upon conviction. In addition, the Court finds that Petitioner has waived the present claims for relief following entry of his guilt plea. See Tollett v. Henderson, 411 U.S. 258, 267 (1973) (finding that nonjurisdictional claims, such as a claim regarding the application of the habitual felon sentencing enhancement, are not cognizable on federal habeas review following the entry of petitioner's valid guilty plea).

Finally, to the extent Petitioner contends that his enhanced sentence as a recividist is in violation of the Eighth Amendment, this argument is rejected. See Graham v. Florida, 560 U.S. 48, 59-60 (2010) (discussing numerous Supreme Court cases upholding sentences under state recidivist statutes). Based on the cases cited therein, and the extensive criminal felony record Petitioner possessed at the time of his sentencing as a habitual felon, and his resulting sentence of 145 to 185 months, the Court finds no merit to an Eighth Amendment claim for cruel and unusual punishment.

      F.      Ineffective Assistance of Counsel (Ground Eight)

In his final claim for relief, Petitioner's continues his challenge to his habitual felon indictment, and concomitant sentencing enhancement, however this time he couches his

challenge as one for ineffective assistance of counsel. As the Court has already concluded that Petitioner's challenges to the habitual felon indictment are wholly without merit, Petitioner's present claim will be dismissed because he cannot establish either deficient performance nor prejudice under Strickland v. Washington, 466 U.S. 668 (1984). Put simply, any challenge to the validity of the indictment by his attorneys would have been meritless.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Petitioner has failed to present any meritorious claims for relief and Respondent's motion for summary judgment will be therefore be granted.

**IT IS, THEREFORE, ORDERED** that:

1. Respondent's motion for summary judgment is **GRANTED**. (Doc. No. 7).

2. Petitioner's motion for a certificate of appealability is **DENIED**. (Doc. No. 13).

3. Petitioner's motion to substitute Nora Hunt as the respondent in this matter is **GRANTED**. (Doc. No. 14).

4. Petitioner's petition for habeas corpus will be **DENIED** and **DISMISSED**. (Doc. No. 1).

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when

relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

The Clerk of Court is directed to close this civil case.

**IT IS SO ORDERED.**

Signed: July 28, 2014

Frank D. Whitney
Chief United States District Judge